352 So.2d 366 (1977)
Ronald GREEN
v.
LIBERTY MUTUAL INSURANCE COMPANY, Ray Pitre, Ray Valliant, George Isreal and Robert Sour.
No. 9025.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Rehearing Denied December 13, 1977.
Writ Refused January 30, 1978.
*367 Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Eldon E. Fallon, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Stewart E. Niles, Jr., and Steven G. Durio, New Orleans, for Ray Pitre, George Isreal, Robert Sour and Liberty Mut. Ins. Co., defendants-appellees.
Leonard Fuhrer, Alexandria, for Louisiana Trial Lawyers Ass'n, amicus curiae.
Before LEMMON, STOULIG and BEER, JJ.
STOULIG, Judge.
This is an appeal from a judgment dismissing an "executive officer" tort suit on an exception of no cause of action. Ronald Green alleged the negligent acts of omission of four officers [1] of Westbank Electric, Inc., created unsafe working conditions at his place of employment that proximately caused his injury in an industrial accident.
*368 The accident occurred January 11, 1976. La.Acts 1976, No. 147, § 1 was enacted some six months later, and, among other things, it amended R.S. 23:1032 to prohibit suits against executive officers based on any activity they performed as management of the corporate employer. This suit was filed November 8, 1976, several months after the amendment became effective.[2] In maintaining defendants' exception, the court applied the amending law retroactively.
The issue before us is whether the amendment destroys a cause of action based on incidents that occurred prior to the effective date of Act 147 of 1976. Or, stated another way, is the law at issue subject to prospective or retroactive application?
As a general rule, laws are deemed to be prospective in effect unless their language clearly indicates otherwise. C.C. art. 8; R.S. 1:2; Churchill Farms, Inc. v. Louisiana Tax Com., 338 So.2d 963 (La.App. 4th Cir. 1976); Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3d Cir. 1974); 1 Planiol Treatise on the Civil Law (La.St.L.Inst. transl. 1959) §§ 254 and 255 at page 181. Exceptions to this principle are laws which are (1) interpretative (Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975); (2) remedial or curative (Fullilove v. U. S. Casualty Company of New York, 129 So.2d 816 (La. App. 2d Cir. 1961); and (3) procedural.
Appellant contends R.S. 23:1032, as amended by Act 147, falls within the general rule of prospective operation. Appellees claim the law is remedial and/or curative or interpretative and is entitled to retroactive application.
Prior to its adoption, an injured workman could file a suit in tort against any executive officer or director of his corporate employer for a work-connected injury despite the R.S. 23:1032 concept that a workmen's compensation claim was an exclusive remedy. The landmark decision in Canter v. Koehring Company, 283 So.2d 716 (La.1973), crystallized the workman's right to bring actions in tort against executive officers by reconciling divergent lines of jurisprudence. All circuit courts of appeal agreed the executive officer faced individual liability in tort under R.S. 23:13 and certain principles of agency, differing only as to the degree of answerability. After tracing the development of the jurisprudence in this area, Canter repudiated that line of cases limiting C.C. art. 2315 liability in any respect. Presumably the right to sue was conferred by R.S. 23:1101. That the Canter court did not consider the executive officer suit in conflict with the R.S. 23:1032 exclusiveness section of the Workmen's Compensation Act is evidenced by its failure to discuss the point in an otherwise thorough analysis of all law relevant to the issue.
Act 147 clearly repudiates this result by amending R.S. 23:1032 to prohibit executive officer suits based on employment-connected negligent acts of commission or omission. Now not only is the corporation itself shielded from tort liability under the respondeat superior doctrine, but also the corporate directors have no personal exposure as long as the action complained of falls within the ambit of their managerial duties.
In attempting to bring this within one of the exceptions to the prospective application rule, appellees rely on Gulf Oil Corporation v. State Mineral Board, supra, which discusses the permissibility of retroactively applying interpretative laws. The reasoning is the legislature is simply stating more clearly what it meant to say in the first place. We quote the language appellees emphasize:
"Moreover, interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. * * *" 317 So.2d at 591.
*369 The issue in Gulf was whether the State's patents granted to private owners over navigable water bottoms were valid. Pointing out that such conveyances were null ab initio and repugnant to stated public policy, the Supreme Court declared La.Acts 1912, No. 62 invalid insofar as it quieted title to privately owned property illegally transferred from the State. In reaching this result it discussed at length La.Acts 1954, No. 727, which (1) reiterated the State's policy against private ownership of navigable water bottoms, (2) specified that privately held property titles granted under state patents could only be quieted by La.Acts 1912, No. 62 if the land in question could have been validly deeded ab initio; and (3) specifically declared the 1912 law intended this originally.
While the Supreme Court discussed Acts 1954, No. 727 as evidence of the legislative intent expressed by La.Acts 1912, No. 62, and, without holding it was interpretative, the Court based its result on the original act of repose. In so doing it avoided the constitutional pitfalls of a retroactive application of an amending statute.
The instant case is not concerned with a law repugnant to public policy of this State. We are dealing with an individual right to seek redress for injuries in a given situation. Whether an injured workman may or may not file a tort suit against an executive officer of his employer corporation has no relation to policy limitations by the sovereign toward its citizens as does the public versus private ownership of water bottoms. Unlike Gulf, this case takes away what once was a valid cause of action. The water bottoms ownership, the Court reasoned, was null ab initio. We do not deem Act 147 of 1976 a clearer restatement of the original section of the compensation law. Rather we think it is a change that the legislature in its wisdom thought was relevant at this point in time.
Nor do we conclude Act 147 is remedial or curative and entitled to retroactive application as was the statute at issue in Fullilove v. U. S. Casualty Company of New York, supra. Briefly, that case involved a suit titution. On both the state and federal levels, the court against the State of Louisiana authorized by a joint resolution of the legislature, waiving the State's sovereign immunity. The State filed an exception of no cause or right of action, which the trial court maintained because the Supreme Court had recently declared the legislature could not validly waive the sovereign immunity granted the State by La.Const.1921, Art. 3, § 35. (Duree v. Maryland Casualty Company, 238 La. 166,114 So.2d 594 (1959)). While the Fullilove appeal was pending, the constitution was amended to permit the legislature to waive the State's sovereign immunity in certain cases. The court gave the amendment retroactive effect. It first stated the language of the amendment manifested an intent that the amending law apply retroactively. (We agree it did.) Alternatively, it buttressed this result by holding that the amendment was curative and remedial. The Fullilove court manifested its concern over the divesture of a property right (immunity from suit) by a retroactive application of the law in its lengthy explanation of why no constitutional question was involved. On a state level, the law was a part of the constitution. On both the state and federal levels, the court pointed out, no constitutional argument could be made on the state's behalf because constitutional guarantees flow from the sovereign to the citizen and not to the state itself. In short, the state as an entity has no constitutional rights.
U.S.Const. Art. 1, § 10 prohibits a state from passing a retroactive law that would destroy a vested right of a citizen or impair the obligation of a contract, while the Fourteenth Amendment guarantees the citizen against loss of a property right without due process of law. See also La.Const. 1974, Art. 1, § 23. The right to file a damage suit in tort is a vested property right. If we were to give retroactive effect to the amending language of R.S. 23:1032, we would effectively terminate plaintiff's right and in so doing give an unconstitutional interpretation to the statute. Churchill Farms, Inc. v. Louisiana Tax Com., supra.
*370 We hold the amendment to R.S. 23:1032 is prospective in operation. Our result conflicts with the holding in Barr v. Preskitt, M.D., Ala.E.D., 389 F.Supp. 496 (1975). While we are impressed with the presentation of authority to support the retroactive application point of view, we view the constitutional question in a different light and, not being bound by the Barr holding, respectfully disagree.
For the reasons assigned, the judgment appealed from is reversed and this matter is remanded for further proceedings consistent with the views herein expressed. The motion to certify this matter to the Supreme Court of the State of Louisiana is denied. All costs of this appeal are to await the final disposition of this matter.
REVERSED AND REMANDED.
NOTES
[1] Named defendants were Ray Pitre, Ray Valliant, George Isreal and Robert Sour, individually, and their liability insurance carrier, Liberty Mutual Insurance Company.
[2] The effective date of La.Acts 1976 is October 1, 1976.